UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


MEYOKE E. FRANKS                         CIVIL ACTION NO. 07-cv-1791

VERSUS                                   JUDGE WALTER

US COMMISSIONER SOCIAL                   MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**REPORT AND RECOMMENDATION**

**Introduction**

Meyoke Franks ("Plaintiff") filed an application for Supplemental Security Income payments based on limitations related to scoliosis. ALJ Nancy Griswold issued a decision in 2003 that found Plaintiff was capable of performing medium work, which permitted her to return to her past relevant work as a fast-food cook. Tr. 142-48. The Appeals Council vacated that decision and remanded it for consideration of new medical evidence submitted by Plaintiff, together with instructions to appropriately consider and explain the weight given to the opinions of Dr. John Smith, a treating physician. Tr. 189-91.

ALJ Osly Deramus received the case on remand and conducted a second hearing. He discounted Dr. Smith's opinion in favor of a report from a non-examining medical expert. He concluded that Plaintiff had the residual functional capacity ("RFC") to perform a significant range of sedentary work (subject to certain limitations), and he accepted the testimony of a vocational expert ("VE") that a person of Plaintiff's age, education, work experience, and RFC could perform jobs such as check casher, which exists in significant

numbers in the national and regional economy. Based on that finding, the ALJ held that Plaintiff was not disabled within the meaning of the regulations. Tr. 20-29. The Appeals Council summarily denied a request for review (Tr. 7-9), and Plaintiff filed this civil action seeking the limited judicial review that is available under 42 U.S.C. § 405(g).

Plaintiff was 34 years old at the time of the ALJ's decision. She has a twelfth-grade education and past work experience that includes employment as a cashier, poultry worker, cook, and production assembler of piece goods. The record shows that Plaintiff had a Harrington Rod procedure for her scoliosis in 1984. She was involved in a car accident in 2001 that caused neck strain and musculoskeletal contusions. X-rays did not indicate any significant problems caused by the accident, and a CT scan of the lumbar spine showed only a mild disk bulge.

Plaintiff's brief lists three issues for appeal: A general assertion that the ALJ did not have substantial evidence to support his decision, a complaint that the ALJ did not appropriately consider the opinion of the treating physician, and an argument that the ALJ incorrectly found that there are jobs available that Plaintiff could maintain. The first two issues are based almost entirely on Plaintiff's argument that the ALJ did not afford appropriate weight to the opinion of Dr. John Smith.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

numbers in the national and regional economy. Based on that finding, the ALJ held that Plaintiff was not disabled within the meaning of the regulations. Tr. 20-29. The Appeals Council summarily denied a request for review (Tr. 7-9), and Plaintiff filed this civil action seeking the limited judicial review that is available under 42 U.S.C. § 405(g).

Plaintiff was 34 years old at the time of the ALJ's decision. She has a twelfth-grade education and past work experience that includes employment as a cashier, poultry worker, cook, and production assembler of piece goods. The record shows that Plaintiff had a Harrington Rod procedure for her scoliosis in 1984. She was involved in a car accident in 2001 that caused neck strain and musculoskeletal contusions. X-rays did not indicate any significant problems caused by the accident, and a CT scan of the lumbar spine showed only a mild disk bulge.

Plaintiff's brief lists three issues for appeal: A general assertion that the ALJ did not have substantial evidence to support his decision, a complaint that the ALJ did not appropriately consider the opinion of the treating physician, and an argument that the ALJ incorrectly found that there are jobs available that Plaintiff could maintain. The first two issues are based almost entirely on Plaintiff's argument that the ALJ did not afford appropriate weight to the opinion of Dr. John Smith.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The Medical Reports**

Dr. Smith completed a report in 2002 that was submitted to him in connection with a Family Independence Work Program. Smith wrote that Plaintiff had scoliosis and myoligamentous strain. He listed her prognosis as fair to good with medical management, and he wrote that Plaintiff was taking anti-inflammatory and a muscle relaxer medications. Dr. Smith was asked to check yes or no as to whether Plaintiff could participate in certain activities. He indicated that Plaintiff could attend school (seated in a classroom from five to seven hours a day) but could not perform office work, physical light duty, or outdoor activity that might include lifting over 15 pounds. Tr. 138.

Treatment records from 2002 and 2004 show that Plaintiff frequently complained of back pain during visits to Dr. Smith and other physicians. Plaintiff was treated with various non-narcotic oral medications, and she also received some injections to address her pain. See, e.g., Tr. 249-75. In a visit in August 2002, Dr. Smith recounted how Plaintiff said she was offended when another physician told her that she needed to go and get a job. Dr. Smith

said he had a long discussion with Plaintiff about her pride and how insulted she felt when the other doctor suggested she go back to work. He recorded that Plaintiff said she was actually looking forward to working because she could not make ends meet on welfare with two children. Dr. Smith added that he thought Plaintiff "would do great in a classroom situation possibly when she gets over this acute injury some min. lifting and shredding type activities ... ." Tr. 274.

Dr. Smith opined in August 2003 that, with regard to work-related abilities, sitting for long periods of time, standing, walking, lifting, and carrying were not good activities for Plaintiff to keep her back pain controlled. Dr. Smith said that he would not recommend that Plaintiff obtain employment where those activities were required. The ALJ describes this report in his decision at Tr. 22 , and the Government references the report with a citation to Tr. 205, which is a letter from Plaintiff's counsel that summarizes the report. The court has not been able to locate the actual report, but the parties do not appear to contest its contents.

Dr. Smith wrote a letter to the agency in March 2006. He reported that he had a treating relationship with Plaintiff dating back to 2000, during which he had followed her mostly for back pain medication and depression/anxiety. Dr. Smith wrote, "I am unsure of her ability to work." He stated that it was his clinical impression that Plaintiff "truly does suffer from daily pain" that is worse with weather changes and certain activities, such as prolonged standing and/or sitting. He added that Plaintiff's ability to lift and bend is limited not only by pain but the stabilization rod in her back. He said he had not prescribed narcotic

analgesics, and the best symptom control he had found was injection of cortico-steroids. Tr. 280.

About a month later, in April 2006, Dr. Smith wrote ALJ Deramus regarding the claim for benefits. He stated that he had been following Plaintiff for back pain since March of 2001, and he had treated her with multiple modalities, including muscle relaxers, Neurontin, and anti-inflammatories. Dr. Smith attached a completed functional capacity assessment form, and he said his letter was offered to supplement the form. He reported that Plaintiff was going to have "significant difficulty" with any activity that involves her mid-back, which would include sitting or standing for more than one to two hours at a time. It would also include stooping, bending, or squatting. Carrying or lifting would exacerbate back pain. Dr. Smith concluded that it was his opinion that Plaintiff would be "unable to compete in an 8-5, five day a week profession given her limitations as listed above." Tr. 281-82. Dr. Smith attached a completed assessment form in which he checked boxes to indicate, in most categories, the most limited ability, suggesting an inability to perform even sedentary work. Tr. 283-86.

The ALJ sought a report from Dr. Frank Barnes, as a consulting medical expert. Dr. Barnes, a specialist in orthopedic surgery, reviewed the medical records but did not physically examine Plaintiff. Dr. Barnes opined that Plaintiff could lift/carry 10 pounds occasionally and up to five pounds frequently, stand/walk at least two hours per work day, and sit about six hours per work day (with periodic alternate sitting and standing permitted

to relieve pain or discomfort). Dr. Barnes added that Plaintiff would be limited in her upper extremities to push/pull only 10 pounds, and he found that she could occasionally climb ramps and stairs, but not ladders, ropes or scaffolds, and that she could occasionally kneel, crouch, crawl, or stoop. Her only environmental limitation was to avoid vibration, which Dr. Barnes said was likely to be painful. Tr. 287-97.

**The ALJ's Assessment**

The ALJ found that Plaintiff had the RFC to perform a significant range of sedentary work activity, with the precise abilities and limitations found by Dr. Barnes. Tr. 26. This was in conflict with Dr. Smith's most recent assessment that indicated, for example, that Plaintiff could lift and carry less than 10 pounds, and could stand/walk less than two hours in a work day. Those limitations are inconsistent with both Dr. Barnes' report and the ability to perform sedentary work.[1]

The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. The treating physician's opinion on the nature and severity of a patient's impairment will be given

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Social Security Ruling 83-10 explains that a job involves walking and standing "occasionally" if those tasks generally total no more than about 2 hours of an 8-hour workday, with the other six or so hours spent sitting.

"controlling weight" if it is well supported by medical evidence and not inconsistent with other substantial evidence. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

The ALJ may, however, discount the weight of a treating physician's opinion when good cause is shown. Good cause exists when a treating physician's opinion is conclusory, unsupported by medically acceptable techniques, or is otherwise unsupported by the evidence. Newton, 209 F.3d at 455-56. The regulations provide that the Commissioner "will always give good reasons" for the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). The regulation specifically requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

Even if the treating source's opinion is not well supported by medically acceptable evidence or is inconsistent with other substantial evidence in the record, that means only that the opinion is not entitled to controlling weight. It is still entitled to some deference and must be weighed using all of the factors in the above list. Newton, 209 F.3d at 456. And Newton made clear that "an ALJ is required to consider each of the § 404.1527(d) factors

before declining to give any weight to the opinions of the claimant's treating specialist." Id. The Newton case was remanded to permit that analysis.[2]

The ALJ acknowledged his general obligation to consider medical opinions, with citation to Section 404.1527. Tr. 24. The ALJ's decision does not tick off each of the regulatory factors in order in one place, but the overall decision demonstrates that the ALJ did consider the relevant factors before determining the weight he would afford Dr. Smith's opinions. The ALJ summarized the treatment history from 2002 forward, and the frequency of examination is evidenced by that summary. The nature and extent of the treatment relationship was that of a general practice family physician and a patient who was afforded conservative treatment for complaints of chronic back pain.

The ALJ found that Dr. Smith had not been consistent in his assessment of Plaintiff's limitations. He pointed to Smith's statement in 2002 that Plaintiff could not perform office work, while he said at the same time that she could attend school. The ALJ stated his belief that school activities often require one to carry books that weigh in excess of the sedentary work limitations, and "are not unlike office work." Dr. Smith said in 2003 that he would not recommend that Plaintiff obtain employment where she had to engage in long periods of standing, walking, lifting, or carrying, but he later said he was "unsure" of her ability to

---

[2] Later cases have stated that the six-factor review is required only when there is an absence of competing first-hand medical evidence. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003). There is no competing first-hand medical evidence in this case. The competing opinion comes from a non-examining consultant, so the Newton review is applicable in this case.

work. But just a month after that uncertainty, Dr. Smith was giving a strong opinion that Plaintiff had extraordinarily limited physical abilities and that she would not be able to compete in the workplace. The ALJ observed that physicians with a long history with a patient are often influenced by sympathy or pressure from the patient to make supportive findings in connection with a benefits application. The ALJ noted the difficulty of confirming such motives, but he believed that they were more likely in a situation where the physician's opinion departs from the other evidence of record, as he found had happened in this case. For the reasons discussed above, the ALJ decided that Dr. Smith's opinion would be considered, but "given less weight due to the inconsistencies of his opinion." On the other hand, significant weight was given to Dr. Barnes' opinion due to his role as a medical advisor and his specialty as an orthopedic surgeon. Tr. 25.

A reasonable person might have afforded differing degrees of weight to the competing physician opinions, but the ALJ's decision is also reasonable and includes a sufficiently fair discussion of the regulatory factors to support his determination and permit meaningful appellate review. A remand for a more specific discussion of each of the regulatory points would undoubtedly lead to the same decision. The competing opinions were not markedly different, with Dr. Barnes' opinion depicting Plaintiff as just able to perform a wide range of sedentary work (the least demanding level of work under the regulations), while Dr. Smith opined that Plaintiff was slightly more limited so that she could not perform sedentary work.

The ALJ was within his discretion, given the good reasons he set forth his in his written decision, to favor Dr. Barnes' opinion in this case.

The ALJ also properly rejected Dr. Smith's opinion as to the ultimate issue of whether Plaintiff could work or was disabled. Tr. 25. A statement or conclusion by a treating physician that a claimant is disabled or cannot work does not mean that the claimant is disabled for purposes of the Social Security Act; that legal conclusion is for the Commissioner to make. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). What is important is the physician's medical findings and opinions about the claimant's health problems and the particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law.

**Maintaining Work**

Plaintiff's first two issues do not entitle her to relief because the ALJ was within his discretion to favor Dr. Barnes' opinion, and that opinion provided substantial evidence to support the RFC found by the ALJ. Plaintiff's final issue is an argument that Plaintiff could not *maintain* a job even if she may at times be capable of performing work.

Plaintiff's argument about maintaining an available job invokes the Fifth Circuit's Singletary decision, which interpreted disability under the Act to apply to cases in which a person is capable of working for short periods but can not maintain a job because his impairment flares up too often. Singletary does not, however, require every decision by an

ALJ include a separate finding regarding the claimant's ability to maintain a job. Frank, 326 F.3d at 621. An ALJ's finding that a claimant can perform a certain level of work necessarily includes a finding that he is able to perform at that level not just intermittently but eight hours a day, five days a week. A separate and express finding regarding maintaining work is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." Id. See also Dunbar v. Barnhart, 330 F.3d 670 (5th Cir. 2003); Weimer v. Astrue, 284 Fed.Appx. 129, 135 (5th Cir. 2008). The ALJ's basic decision with respect to disability was upheld above, and there is no indication in this record that a separate finding with regard to maintaining employment was required.

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **affirmed** and that Plaintiff's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of January, 2009.

									_____
									MARK L. HORNSBY
									UNITED STATES MAGISTRATE JUDGE